Steuart *vs.* Meyer, *et al.*

(Decided 2nd July, 1880.)

CHARLES C. STEUART and HELEN STEUART *vs.* FREDERICK C. MEYER, and others.

*Tax Sale—Insufficient notice of Sale—Effect of defective notice—What was required formerly to support a Sale made by a Collector, for taxes—Act of 1874, ch. 483, sec. 51—Order of ratification by the Circuit Court of a Sale for Taxes, not conclusive—Terms imposed as a Condition upon which a Sale made by a Collector, for Taxes, should be set aside.*

The statute (Local Code, Art. 4, sec. 874,) prescribing the notice to be given, where it shall be necessary to sell property in the City of Baltimore, for the payment of taxes, requires that the auditor, (by subsequent statute the collector,) "shall first give thirty days' notice by advertisement, published twice a week in two of the daily newspapers, published in said city, that he will sell at public auction on the day in the said advertisement mentioned, which day of sale shall be after the expiration of thirty days' notice." A notice of the sale of property in the City of Baltimore for the payment of taxes, was first published on the 15th of March, and the sale took place on the 14th of April following. HELD:

1st. That the notice of sale was insufficient, as under the require-ment of the statute, both the day of giving the notice, or making its first publication, and the day of sale should have been excluded from the computation.

2nd. That the defect of notice rendered the sale invalid.

Steuart *vs.* Meyer, *et al.*

Before the passage of the statute requiring the collector to report the sale, together with all the proceedings had in relation thereto, to the Courts for confirmation, a sale made by a collector, for taxes, could only be supported upon its being made to appear *affirmatively* that all the provisions of the statute, authorizing the sale, had been strictly complied with.

But under the statute now in force, (Act of 1874, ch. 483, sec. 51,) the purchaser is relieved of the *onus* of proof, and the *onus* of showing the illegality of the proceedings is cast upon the party resisting the sale. The effect of the order of ratification is only *prima facie* in support of the sale, not conclusive; the sale, under the order of confirmation, affording evidence of a good title, until successfully assailed by evidence, showing illegality in the proceedings upon which it is foumded. Until such proof is offered by the assailing party, the sale, if ratified and confirmed, stands good and effective, by operation of the statute. But where it is affirmatively shown that no legal or sufficient notice has been given of the time and place of sale, the *prima facie* effect of the order of ratification is overcome, and the whole proceeding is thereby rendered null and without effect.

Where in default of the payment of State and City taxes, assessed for the years 1871 and 1874, a lot of ground and improvements thereon, in the City of Baltimore, was sold by the collector, and the sale was reported to the Circuit Court of Baltimore City, and by it confirmed, and the owner in trust of the reversion in fee, together with his *cestui que trust* filed a bill asking to have the sale set aside and declared void, and the cloud upon the title to the property which the sale and the proceedings thereon had created, removed, and it was shown that the sale was fatally defective in consequence of an insufficient notice thereof, it was HELD :

That the complainants were entitled to the relief asked for, but as a condition upon which the same should be granted, they must pay, or bring into Court to be paid, to the party entitled to receive it, the full amount of the taxes in arrear at the time of the sale by the collector, together with the interest accrued thereon to the time of payment, and also all taxes that had subsequently accrued due on the property, with interest.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint in this case prayed that the sale made to the appellee, Frederick C. Meyer, might be declared

null and void ; and that an injunction might be issued to restrain and prohibit said Meyer from taking possession of the premises in litigation, or setting up or asserting any title thereto under the pretended sale of the 14th of April, 1875, or demanding or receiving from Robert D. Morrison and Thomas R. Presstman, receivers, the net rents and profits of said property in their hands as such receivers ; and also that an injunction might be issued against the said Morrison and Presstman enjoining and prohibiting them from delivering up possession of said premises to said Meyer or to any one on his behalf, and from paying over to him, or to any one upon his order, the net balance of the rents and profits of said property, collected by them as such receivers.   The Court (DOBBIN, J.,) passed a *pro forma* decree refusing the injunction asked for and dismissing the bill.   From this decree the complainants appealed.   A further statement of the case is contained in the opinion of the Conrt.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and IRVING, J.

*John P. Poe* and *Bradley T. Johnson,* for the appellants.

The sale of the 14th of April, 1875, was absolutely void, because the preliminary notice, required by law, of the sale, was not given, the day of the sale being before, and not after the expiration of thirty days' notice.   The proceedings show that notice of the sale was advertised twice a week for four successive weeks, i. e. on March 15th, 19th, 23rd, 27th and 30th—and on April 3rd, 6th, 10th and 14th.   The first insertion being on March the 15th, and the last on April 14th, the day of sale.   The statute requires, " That whenever it shall become necessary to sell any parcel of ground for the payment of taxes . . . . the auditor, (now City Collector) shall first give thirty days'

notice by advertisement published twice a week . . . . that he will sell at public auction on the day in said advertisement mentioned, *which day of sale shall be after the expiration of thirty days' notice."* Code Public Local Law, Art. 4, sec. 874.

A tax sale being in its nature a forfeiture, it is imperatively necessary that all the requirements of the statute, prescribing the mode of sale, shall be substantially complied with. And in the construction of the statute, the leaning of the Court will be against the forfeiture. Unusual care is required in obeying the directions of the statute regarding notice. *Cooley on Taxation,* 334; *Polk vs. Rose,* 25 *Md.,* 159, 160.

The statute requires the day of sale to be after the expiration of thirty days' notice. This case therefore must be distinguished from those which require an act to be done within thirty days, or *on* thirty days' notice; for there the act may be done on the 30th day. But where the day of the act must be after the expiration of thirty days' notice, it is manifest that the thirty days must fully expire before the day upon which the act can be done, or in other words the act must be done on the 31st day. The plain intention of such language is to give *thirty clear days* before the doing of the act. *Robinson vs. Waddington,* 13 *Ad. & El.,* 753, (66 *E. C. L.,* 753;) *Comm. Bank of Oswego vs. Ives,* 2 *Hill,* 356; 3 *Chitty's Gen. Prac.,* 109; *Judd vs. Fulton,* 10 *Barb.,* 118; *Am. Law Register,* (*N. S.*) *April,* 1877, *p.* 222; *Alex. Br. St.,* 568, 570.

When the statute requires notice to be given of a certain number of clear days, both the day upon which the notice is served and the day of proceeding is excluded in the computation. *Walsh vs. Boyle,* 30 *Md.,* 266. In other words, whenever a particular number of days is prescribed, the computation of the number is made by excluding the first day. This is now the universal rule. *Young vs. Higgon,* 6 *M. & W.,* 52—*overruling (Castle vs. Burdett,*

3 *T. R.*, 623; *Rex vs. Adderly*, 2 *Doug.*, 463; *Wallace vs. King*, 1 *H. Bl.*, 13;) *Webb vs. Fairmaner*, 3 *M. & W.*, 473; *King vs. Justices of Cumberland*, 4 *Nev. & M.*, 378, 30 *E. C. L.*, 380; *Regina vs. Justices of Shropshire*, 8 *Ad. & El.*, 173; *Mitchell vs. Foster*, 12 *A. & E.*, 472; *Hardy vs. Ryle*, 9 *B. & C.*, 603; *Calvert vs. Williams*, 34 *Md.*, 672; *Walsh vs. Boyle*, 30 *Md.*, 267; *Sheets vs. Selden's Lessee*, 2 *Wall.*, 190; *Bigelow vs. Wilson*, 1 *Pick.*, 485; *Howman vs. Liswell*, 6 *Cowen*, 659; *Cornell vs. Moulton*, 3 *Denio*, 12; *Kim vs. Osgood*, 19 *Mo.*, 60; *Gorham vs. Wing*, 10 *Mich.*, 486; *Windsor vs. China*, 4 *Greenf.*, 298; *Barr vs. Lewis*, 6 *Texas*, 76; *Ryle vs. Maulding*, 7 *Marsh.*, (*Ken.*,) 202; *Blanchard vs. Hilliard*, 11 *Mass.*, 85; *Armstrong vs. Scott*, 3 *Iowa*, 433; *Flint vs. Sawyer*, 30 *Maine*, 229; *Scott vs. Babcock*, 3 *G. Greene*, (*Iowa*,) 133; *Early vs. Doe*, 16 *Howard*, 610; *Burroughs on Taxation*, 297; *Zouch vs. Empsey*, 4 *B. & Ald.*, 512; *Trustees of the Lutheran Church vs. Heise*, 44 *Md.*, 476.

On this principle of computation, the thirty days which are to expire were not full until the 14th of April. The statute requires, however, the expiration of this time; i. e. thirty clear days—and it could not be said to have expired until the 15th of April.

The sale having been made on the 30th instead of the 31st day, is void. *Cooley on Taxation*, 335.

The sale is void for the further reason, that no statement of the amount of taxes claimed to be due and in arrear is pretended to have been served on Reinheimer; nor indeed could any have been served upon him, for he died in 1873. *Act of* 1874, *ch.* 483, *sec.* 11; *Early vs. Doe*, 16 *Howard*, 610; *Cooley on Taxation*, 278–79; *Blackwell on Tax Titles*, *Ch. XII*, *p.* 237, (4*th Ed.*)

The report of the City Collector avers as follows viz:

" That thirty days prior to the proceedings hereinafter mentioned, bills setting forth the amount of taxes due on the said property to the State of Maryland and to the Mayor and City Council of Baltimore, respectively, and

specifying the year or years for which such taxes were due, were delivered to Philip Haschert, employé of John Smith, residing at No. 334 Aliceanna Street, the owner of such property."

Now it is proved in this case that John Smith was not then the owner of the property, nor did he then live there, nor did Mary Haschert ever live on the premises. *Vide Act of* 1874, *ch.* 483, *sec.* 48.

None of the successive owners of the property being non-residents, the notice required by sec. 48 of the Act of 1874, ch. 483, in order to be effectual, must have been a personal notice left with the taxpayer, or at his or her usual place of abode. Notice delivered to a person in possession is wholly insufficient, unless the premises be in the actual occupation of the taxpayer himself.

The collector's official statement is, that bills were delivered to Philip Haschert, employé of John Smith, residing at No. 334 Alice Anna street, the owner of the property. This means, of course, that John Smith was the owner of the property, and that he resided there.

Hence, unless in point of fact No. 334 Alice Anna street was the abode of John Smith, bills left at that place with Philip Haschert, his alleged employé, were clearly insufficient. Now, John Smith did not reside on the premises at the time the bills are alleged to have been delivered to Philip Haschert, nor was he then the owner of the property. The collector's statement is, therefore, erroneous in two essential particulars, to wit: first, in stating that John Smith was the owner of the property; and secondly, in stating that he resided on the premises; and consequently, the sale having been made without the indispensable preliminary notice was void.

*Thomas R. Presstman, John Johnson* and *Orville Horwitz* for the appellees.

Under the Act of 1874, ch. 483, the Circuit Court of Baltimore City, in finally ratifying and confirming the

sale in this case was exercising a special limited jurisdiction, and the statute not having provided for an appeal from its judgment in such cases, no appeal would lie, and as no appeal could be successfully maintained from its final order of ratification when exercising its special authority, so neither will this Court permit the appellants indirectly to do by appealing to its general jurisdiction, what they could not do by an appeal from its order exercising its special authority. *Wilm. and Susq. Railroad Co. vs. Condon,* 8 *Gill and John.,* 443; *Savage Manf. Co. vs. Owings,* 3 *Gill,* 497; *Carter and Wife vs. Dennison,* 7 *Gill,* 157; *Kinnear & Willis vs. Lee & Reynolds,* 28 *Md.,* 488; *Steuart, et al. vs. Meyer, et al.,* 48 *Md.,* 423.

The Circuit Court of Baltimore City had no jurisdiction in the case presented by the bill.

The matters and things alleged in the bill are matters and things already adjudicated by the Circuit Court in a cause between the same parties.

The matter in controversy has been already heard by the Circuit Court in the case of *Ex parte Lot* 888, *Chas. C. Steuart, et al. vs. Meyer, et al.,* and decided in favor of the appellees, and from said decision an appeal has been taken to this Court to be here determined.

The only substantial question in the case already disposed of and appealed to this Court, viz., the want of a proper notice was properly disposed of, on the authority of the case of *Walsh vs. Boyle,* 30 *Md.,* 269. The complainants have a full and adequate remedy at law.

The reasons assigned for the invalidity of the sale were assigned in the effort made to have rescinded the final order of ratification and were overruled. The allegation that a cloud upon the title is a ground for equitable interposition is unfounded. *Stuart vs. Palmer,* 74 *N. Y.,* 188.

ALVEY, J., delivered the opinion of the Court.

The plaintiffs in this cause filed their bill to have set aside and declared void a certain tax sale of a lot of ground

and improvements thereon, in the City of Baltimore, as having been illegally made, for State and city taxes assessed for the years 1871 and 1874; and which sale, and the proceedings that have taken place thereon, have created, as it is alleged, a cloud upon the title to the property, which the plaintiffs seek to have removed.

The reversion in fee of the property sold was held by Charles C. Steuart, one of the plaintiffs, in trust for Helen Steuart, the other plaintiff; and the leasehold estate or term for years was held successively by F. Reinheimer, John J. Smith, and Mrs. Haschert, subject to an annual ground rent of $100, payable to the holders of the reversion.

The tax bills for this property for the years 1871 and 1874 were made out againt F. Reinheimer & Co., upon a valuation, of lot and improvements, of $2625; and against John J. Smith upon valuation of additional improvements on same lot of $200. The collector certifies that these bills, thus made out, were delivered, thirty days prior to the levy made as preliminary to sale, to Philip Haschert, employé of John J. Smith, residing at No. 334 Alice Anna Street, the owner of such property. The levy on the property by the collector was made on the 23rd of December, 1874; and the schedule, under the hand and seal of the collector, states the levy to have been made upon " all the right, title, interest and estate of F. Reinheimer & Co., or owner, in and to all that lot of ground, situate," &c., with the improvements thereon, being No. 334, on Alice Anna Street, &c. The proof shows that F. Reinheimer died in 1873, and that John J. Smith assigned the property to Mrs. Haschert and left it in June or July, 1874. The proof also shows that both Smith and Mrs. Haschert resided in Baltimore during the year 1874.

The sale was made on the 14th day of April, 1875. The notice given of this sale was first published on the 15th day of March, 1875, and the last publication of it

was on the 14th day of April, the day on which the sale took place. By the terms of this notice, parties were notified, that unless the taxes due on the property mentioned were paid *on* or before the 14th day of April then next, such property would, on that day, at 1 o'clock p. m., be sold to the highest bidder. The advertisement also contained a clause giving notice that certain property, including that now in controversy, would be sold in fee simple, unless the collector was duly notified in writing, before the day of sale, of the existence of leasehold interests. The sale was made of the property in fee, in pursuance of the notice, to Frederick C. Meyer, one of the defendants, for the sum of $200; and thereupon the collector made report of his proceedings to the Circuit Court of Baltimore City on the 4th day of August, 1875. Upon this report an order *nisi* was passed, on the 7th of February, 1876; and after the notice given as in the *nisi* order prescribed, a final order of confirmation of the sale was passed by the Court, on the 14th day of August, 1876.

After the final ratification of the sale, two several applications by petition were made to the Court, by the present plaintiffs, for review and rescission of its order of ratification, upon the ground of illegality in the proceedings by the collector, and of surprise to the petitioners; but those applications were refused, and the petitions dismissed; and hence the present application by bill to the equity powers of the Court.

There is no dispute in regard to the facts of the case; and whether the relief prayed can be granted depends upon the following questions:

1. Whether the collector has failed, as alleged in the bill, to conform to the substantial requirements of the statute, in the proceedings taken by him to make the sale?

2. If there be non-comformity to the requirements of the statute, whether that question is open on the present pro-

ceeding, after, or notwithstanding, the order of confirmation by the Circuit Court upon the report of the collector, and if so, what is the effect of that order?

3. If the order of confirmation is not in all respects conclusive, whether the present is a proper mode of proceeding whereby to bring in question the validity of the sale, and obtain relief against any illegality that may be shown to exist in the proceedings by the collector to effect such sale?

1. The principal matter relied on as illegal in the proceedings of the collector, is the alleged insufficiency of the notice given of the time and place of sale. As we have already seen, the notice was first published on the 15th of March, and the sale took place on the 14th of April following. The statute prescribing the notice (Local Code, Art. 4, sec. 874), requires that the auditor, (by subsequent statute the collector) "shall first give thirty days' notice by advertisement published twice a week in two of the daily newspapers published in said city, that he will sell at public auction on the day in the said advertisement mentioned, which day of sale shall be *after the expiration* of thirty days' notice." This is equivalent to requiring that there shall be thirty *clear* days' notice; and in such case, and upon such requirement, both the day of giving the notice, or making its first publication, and the day of sale, must be excluded from the computation. In some of the earlier English cases a different rule was adopted, and the day of the act or event from which time was to be computed, as for example, the giving of notice, or the giving of credit, was reckoned inclusively; but by the more recent decisions the rule is entirely settled the other way. And the rule established by the later decisions has been fully adopted by this Court.

In the case of *Lester vs. Garland*, 15 *Ves.*, 248, which has become a leading case upon this subject, the principle of the previous cases was examined, and the rule asserted

that, where time is to run from the doing of an act or the happening of an event, the day on which the act or event happened should be excluded from the reckoning. In the course of his judgment, Sir WILLIAM GRANT, M., R. said, " Our law rejects fractions of a day more generally than the civil law does. The effect is to render the day a sort of indivisible point; so that any act done in the compass of it is no more referable to any one than to any other portion of it; but the act and the day are co-extensive; and, therefore, the act cannot properly be said to be passed until the day is passed." This case was cited and relied on by this Court in the case of *Calvert vs. Williams,* 34 *Md.,* 672.

In the case of *Webb vs. Fairmaner,* 3 *M. & W.,* 472, the action was for the price of goods sold on the 5th of October, to be paid for in two months; and it was held, upon full consideration of the authorities, that the action for the price could not be commenced until after the expiration of the 5th of December. And in *Young vs. Higgon,* 6 *M. & W.,* 49, the same rule was laid down and followed, and in all the subsequent English cases this rule has been recognized as established, and as most consistent with reason. It is only where a different intention is manifested from the terms of the statute, or contract to be construed, that this rule is departed from by the Courts. *Pellew vs. Hundred of Wonford,* 9 *B. & Cr.,* 134; *Hardy vs. Ryle, Id.* 603; *Reg. vs. Justices of Shropshire,* 8 *Ad. & El.,* 173; *Robinson vs. Waddington,* 13 *Ad. & El.,* 753.

In the Supreme Court of the United States the same rule has been fully adopted. In the case of *Sheets vs. Selden,* 2 *Wall.,* 177, the lease provided that the rents should be paid semi-annually on the first days of May and November; and that if any instalment should remain unpaid for one month from the time it should become due, all the rights and privileges secured to the lessee should cease and determine, &c; it was there held that the day

on which the rent fell due should be excluded, and consequently, the month from the first day of May expired on and with the first day of June following. This case has also been cited with approval by this Court, in *Calvert vs. Williams, supra,* and in the recent case of *The Trustees of the Lutheran Church vs. Heise,* 44 *Md.,* 476, where the same rule was applied. And in the case of *Walsh vs. Boyle,* 30 *Md.,* 266, as applicable to a case like the present, the rule was fully recognized. In the recent case of *Bemis vs. Leonard,* 118 *Mass.,* 502, all the cases upon the subject will be found collected and carefully reviewed, and the rule is there deduced and declared to be in accordance with that which we have stated.

Treating then the 15th of March, the day on which the notice was first published, as a mere point of time, and computing the thirty days as commencing with the 16th of March, the thirty days' notice would not expire until the end of the day of the 14th of April following. The sale, therefore, was made one day too soon. The owners of the property were entitled to the full thirty days within which to make payment of the taxes, and payment at any time during the day of the 14th of April would have relieved the property from exposure to sale. Without, therefore, examining the other alleged defects and illegalities in the proceedings by the collector, if the question be still open to the plaintiffs in the present mode of proceeding, the defect of notice will be fatal to the validity of the sale.

2. Then, the next question is, whether such defect is open for consideration on the present proceeding?

Before the passage of the statute requiring the collector to report the sale, together with all the proceedings had in relation thereto, to the Courts for confirmation, a sale made by a collector for taxes could only be supported upon its being made to appear *affirmatively* that all the provisions of the statute, authorizing the sale, had been

strictly complied with. The power of sale vested in a collector of taxes is a naked power, specially conferred by statute, to be exercised under a proceeding *ex parte* in its character, and the effect of which is to divest a citizen of his property without his consent, and often without his actual knowledge. It was therefore established, as an indubitable principle, that a purchaser, who claimed under a power of this nature, should show affirmatively and positively the regularity of the proceedings upon which his title depended. *Alexander vs. Walter,* 8 *Gill,* 239, 260; *Williams vs. Peyton,* 4 *Wheat.,* 77; *Thatcher vs. Powell,* 6 *Wheat.,* 119. But to relieve the purchaser of this *onus,* and to give encouragement to purchasers at tax sales, the statute now in force, (Act of 1874, ch. 483, sec. 51,) provides that the collector shall report the sale, and the proceedings in relation thereto, to the Courts mentioned in the Act; and the Court, to which such report shall be made, shall examine the said proceedings, and if the same *appear to be regular,* and the provisions of law in relation thereto have been *complied with,* shall order notice to be given by advertisement, &c., to show cause, if any they have, why said sale should not be ratified and confirmed; and if no sufficient cause be shown against the ratification, " the said sale shall, by order of said Court, be ratified and confirmed, and the purchaser shall, on payment of the purchase money, have a good title to the property sold," &c. This statute confers upon the Courts designated a special and limited jurisdiction, which attaches upon the report of the collector; and though the sale may be confirmed by the Court, the order of confirmation operates only to relieve the purchaser of the *onus* of proof, and to cast the *onus* of showing the illegality of the proceedings upon the party resisting the sale. The effect, therefore, of the order of ratification is only *prima facie* in support of the sale, not conclusive; the sale, under the order of confirma-

tion, affording evidence of a good title, until successfully assailed by evidence showing illegality in the proceedings upon which it is founded. *Guisebert vs. Etchison*, 51 *Md.*, 478. Until such proof is offered by the assailing party, the sale, if ratified and confirmed, stands good and effective, by operation of the statute. But where, as in this case, it is affirmatively shown that no legal or sufficient notice was given of the time and place of sale, the *prima facie* effect of the order of ratification is overcome, and the whole proceeding is thereby rendered null and without effect. *Alexander vs. Walter*, 8 *Gill*, 260; *Ronkendorf vs. Taylor*, 4 *Pet.*, 349, 364, 365. This would seem to be clearly the result of the authorities, where the statutes do not declare the effect of the order of ratification to be *conclusive* of the legality of all the previous proceedings.

3. Seeing then that the order of confirmation of the sale is only *prima facie* in its effect, giving rise to a rebutable presumption in support of the sale, the next question is, whether the present be a proper mode of proceeding whereby to obtain relief against the effect of the sale thus ratified ?

If the sale is so fatally defective as to be insufficient to vest a good title to the property in the purchaser, every reason would seem to require that the plaintiffs should have ample and speedy remedy to be relieved of the obstacle created by the collector's proceedings to the full enjoyment of their rights, and that the cloud upon the title to the property should at once be removed. They are interested only in the annual ground rents, and in the estate of the reversion; they are not entitled to the possession, and could not, therefore, sue in ejectment for the recovery of the property. Under the circumstances of this case, without resort to a proceeding like the present, the parties would be without adequate remedy for relief against the effect of the *prima facie* title in the purchaser. In such cases, equity asserts complete jurisdiction to remove

the cloud from the title of the property involved, and to prevent unnecessary and vexatious litigation. *Holland vs. City of Baltimore,* 11 *Md.*, 186, 197 ; *Polk vs. Rose,* 25 *Md.*, 153, 161, 162 ; *Carroll vs. Safford,* 3 *How.; (U. S.,)* 441, 463 ; *Thomas vs. Gain,* 35 *Mich.*, 155 ; 2 *Sto. Eq. Juris.*, secs. 694, 700.

But, as a condition upon which this equitable jurisdiction should be exercised, for the relief of the plaintiffs, they should be required to pay, or bring into Court to be paid, to the party entitled to receive it, the full amount of the taxes in arrear at the time of the sale by the collector together with the interest accrued thereon to the time of payment, and also all taxes that have subsequently accrued due on the property, with interest ; and upon the full payment of such sums, the plaintiffs should then have the relief prayed by them. This requirement in regard to the payment of taxes is substantially in accordance with what would have been required if the sale, as reported to the Circuit Court of the City, had been excepted to, and had been set aside, and a re-sale made by the collector. *Act of* 1874, *ch.* 483, *sec.* 51. And we think it but right that the relief sought in this proceeding should be granted only on substantially the same terms as those prescribed by the statute, where the sale is set aside by the Court to which it is reported. When, therefore, the plaintiffs pay, or bring into Court to be paid, the sums due for taxes, they will be entitled to a decree, declaring the sale, and the order of confirmation thereof, to be null and of no effect, and that the deed of the collector be cancelled ; and they will also be entitled to an account of the ground rents as prayed by them. And to the end that such relief may be afforded, we shall reverse the decree appealed from and remand the cause.

*Decree reversed and*
*cause remanded.*

Decided 2nd July, 1880.)