## Clarke v. Clarke.

*Divorce—Hearing before master—Time—Rules of court.*

1. Where a rule of court requires that in divorce proceedings the respondent shall be notified of the master's meeting by registered letter "at least fifteen days prior to said meeting," both the day when the letter was mailed and the day fixed for the meeting must be excluded; fractional parts of days cannot be counted

2. Where the notice was mailed on Dec. 30th and the meeting held on Jan. 14th, the respondent did not have the full fifteen days required by the rule and all the testimony taken at the meeting was null and void.

Divorce. Master's report. C. P. Montgomery Co., June T., 1924, No. 94.

*Gilbert R. Fox*, for libellant.

WILLIAMS, J., March 18, 1925.—There was no personal service of either the subpœna or *alias* subpœna on the respondent and no appearance was entered for him. After the second return of *n. e. i.* by the sheriff, the libellant filed her affidavit as to residence of respondent, in which she said that, after diligent search and inquiry, the present post-office address of the respondent was unknown to her but his last post-office address was No. 226 West Fiftieth Street, New York City, New York.

The master reports that, having been duly qualified, he fixed the 14th day of January, 1925, at ten o'clock in the morning (10 A. M.), as the time of hearing, that, more than fifteen days prior to the taking of testimony, he sent

Clarke v. Clarke.

a registered letter, together with a copy of the interrogatories, to the respondent and that the letter, returned "unclaimed," is attached to and made a part of the report. As a matter of fact, the letter was returned "Removed" and "Not found" instead of "Unclaimed," as stated by the master, who, other than as heretofore narrated, does not say when the letter was sent by or returned to him.

The master attaches to and makes a part of his report, also, a copy of the registered letter. It is dated the 29th day of December, 1924. One look at the post-marks on the returned unopened envelope containing the original letter, at the receipt for registered article and at the registry return receipt, attached to the report, shows, however, that the letter was not sent on the day of date but was mailed sometime before midnight of the following day, Dec. 30, 1924. The registered letter addressed to the respondent at the above residence was mailed, then, only fourteen days before the testimony was sworn and subscribed to before the master: In the Matter of the View of a Proposed Public Road in the Township of Lower Moreland, 41 Montg. Co. Law Repr. 41 (1925).

Our Rule 70, in the second paragraph, declares that "Notice of the first meeting before the master, with a copy of libellant's interrogatories, shall be sent by the master, by registered letter addressed to respondent, *at least* fifteen days prior to said meeting,"

This is equivalent to requiring that there shall be fifteen clear days between the sending of the notice of the first meeting before the master and the meeting itself. In such case and upon such requirement, both the day of the sending of the notice and the day of the meeting must be excluded from the computation: Steuart v. Meyer et al., 54 Md. 454, 463 (1880), Alvey, J.

In the leading case of Lester v. Garland, 15 Vesey, 248, wherein the principle underlying previous decisions was analyzed and, in consequence of such analysis, the rule was asserted that, where time is to run from the doing of an act, the day on which the act was done should be excluded from the reckoning, Sir William Grant, M. R., said: "Our law rejects fractions of a day more generally than the civil law does. The effect is to render the day a sort of indivisible point; so that any act done in the compass of it is no more referable to any one than to any other portion of it; but the act and the day are co-extensive; and, therefore, the act cannot properly be said to be passed until the day is passed:" Calvert, etc., v. Williams et al., 34 Md. 672, 673-4 (1871), Grason, J.; and Steuart v. Meyer et al., 54 Md. 454, 463-4.

In Webb v. Fairmaner, 3 M. & W. 472, the suit was for the price of goods sold on the 5th day of October. By the terms of sale, payment for the goods was to be made in two months. Upon full consideration of the authorities, it was held that action for the price could not be instituted until the 5th of December. A like rule was followed in Young v. Higgon, 6 M. & W. 49, and in all the subsequent English cases this rule has been recognized not only as settled but as the most consistent with sound reasoning. It is only where a different intention is manifested by the inherent terms of the statute, rule of court, or contract, to be construed that the courts depart from the rule: Pellew v. Hundred of Wonford, 9 B. & Cr. 134; Hardy v. Ryle, 9 B. & Cr. 603; Reg. v. Justices of Shropshire, 8 Ad. & El. 173; and Robinson v. Waddington, 13 Ad. & El. (N. S.) 753; Steuart v. Meyer et al., 54 Md. 454, 464.

The English rule has been adopted by the Supreme Court of the United States. In Sheets v. Selden's Lessee, 2 Wall. 177 (1864), Field, J., the lease provided that the rents should be paid on the first days of May and November and that, if any instalment should remain unpaid for one month from the time

it should become due, all the rights and privileges secured to the lessee should cease and determine. It was held that, in the computation of the month, the day on which the rent fell due must be excluded and, consequently, that the month from the 1st day of May expired only with the expiration of the 1st day of June following: Calvert, etc., v. Williams et al., 34 Md. 672, 674; Trustees of the German Lutheran Church, etc., v. Heise & Co. et al., 44 Md. 453, 476 (1876), Alvey, J.; and Steuart v. Meyer et al., 54 Md. 454, 464-5.

In Bemis v. Leonard, 118 Mass. 502 (1875), Gray, C. J., many, if not all, of the cases upon the subject are to be found collected and ably and carefully reviewed in the process of the deduction and declaration by the court that the true and correct rule is as herein stated: Steuart v. Meyer et al., 54 Md. 454, 465; and In the Matter of the View of a Proposed Public Road in the Township of Lower Moreland, 41 Montg. Co. Law Repr. 41, 43. .

Treating, then, the 30th day of December, the day on which the master sent the notice of the first meeting before him, as a mere point of time and computing the fifteen days as commencing with the 31st day of December, the fifteen days did not expire until the end of the 14th day of January following. Therefore, either the first meeting of the master was held one day too soon or the notice of the meeting was sent one day too late. The respondent was entitled to the full fifteen days within which to prepare for his appearance and to appear before the master and compulsion of appearance by the respondent at any time before the midnight ending the 14th day of January deprived him of his full right of preparation and presentation of defence: Steuart v. Meyer et al., 54 Md. 454, 465.

It is to be observed that the rule of court calls for the sending by the master of notice of the first meeting before him "*at least* fifteen days prior to said meeting." What, then, is the legal effect of the words "at least?" To bind such effect to the expression of an exact length of time would be to give to the words used no legal effect at all; for, without them, an exact length of time could have been expressed with more certainty, as, for instance, by the omission of the words "at least" and the mere employment of the words "fifteen days" or "exactly fifteen days." Now, it can hardly be seriously contended that the words "at least fifteen days" are as definite as are the words "exactly fifteen days," which possibly express no more than would be expressed by the words "fifteen days" without an adjunct serving no purpose save to qualify a meaning without such adjunct positively expressed. The words "at least," therefore, must be allowed to have some meaning of their own and to assign to them an obvious one is by no means difficult. While they express that the length of the time shall not in any event be less than fifteen days they distinctively imply that the measure of time may be more than fifteen days. This conclusion is unavoidable unless it be assumed that the words express a definite length of time and such an assumption would bring the construction into collision with the rule just stated. But, at a single glance, it is seen that the words employed import uncertainty. Yet, on which side that uncertainty lies is as obvious as is the meaning to be ascribed to the words themselves. The words "fully, or not less than" would have the same effect, as they, too, would express the thought that the respondent should have a notice of fifteen days certain and more if more be indispensable—as, for example, if the respondent lived so far away, or in such location, that, in fifteen days, he could not possibly receive by mail the registered letter, much less reach the place of the hearing,—but fifteen days' notice in any event, whether indispensable or not. On the other hand, if the makers of the rule had adopted the words "not more than" instead of the words "at least," uncertainty would have been thrown

on the other side. Then the implication would be that the respondent should have fifteen days' notice only if indispensable but not so much if he could reasonably do with less: Roberts *v.* Wilcock, 8 W. & S. 464, 470 (1844), Gibson, C. J.

In this case it is to be borne in mind that general principles of construction are not so much involved as are the express words of a rule of court which cannot be overridden even in the furtherance of what, at first blush, might seem to be equitable justice. The fiction of the law that a day has no fractions yields at times when equity demands that hours be counted, or that the exact time a thing is done be noted, but never where the duration of time, as fixed by rule of court, is free from all doubt. If the first meeting before the master was to be valid, "*at least* fifteen days" had to elapse between his sending notice of and his holding the meeting. The meaning of the words "at least" is "in the smallest or lowest degree; at the lowest estimate, or at the smallest concession of claim; at the smallest numbers:" 4 Cyc. of Law and Pro. 366. In declaring that "at least fifteen days" must elapse between the sending of the registered letter by and the holding of the first meeting before the master, the manifest meaning of the rule of court is that fifteen days must fully elapse between the dates of the two events and the fifteen days meant are fifteen full, clear days, not fourteen days and fractions of two days making in hours another day—although here not even this appears, for the hour when on the thirtieth the master sent the notice is not disclosed by the record—and, with the other fourteen, making fifteen days, but fifteen separate and independent days, the first beginning when Dec. 30th ended, at midnight, and the last ending at the close of Jan. 14th, at midnight. "When so many 'clear days' or so many days 'at least' are given to do an act, or 'not less than' so many days must intervene, both the terminal days are excluded:" Endlich on Interpretation of Statutes, § 391; Gregg's Estate, 213 Pa. 260, 263-4 (1906), Brown, J.

The rule of court is for the protection of one of the parties to a sacred human relation not easily dissoluble: Scheffey *v.* Scheffey, 40 Montg. Co. Law Repr. 5, 8, and 4 D. & C. 716, 718 (1924). Because of the deep interest society has in the continuance of marriage and the family relation, if effect is to be given to the intention of the framers of the rule, the guide to conduct must be literally read and strictly construed: Scheffey *v.* Scheffey, 40 Montg. Co. Law Repr. 5, 8, and 4 D. & C. 716. 718. The regulation cannot be stretched to save a master's meeting clearly intended by the rule to be void. A wife seeking to obtain a divorce from an absent husband who has no knowledge of her action against him must bring herself well within the terms of the prescription. No matter how meritorious her *ex parte* statements may seem to make her case, she has no equities. Her rights are limited to those bestowed upon her by rule of court and statute: Gregg's Estate, 213 Pa. 260, 264.

As the meaning of the words of the rule of court under consideration is so plain, application of the rule as to the computation of time may be unnecessary. So, also, may be reference to the Act of June 20, 1883, § 1, P. L. 136, declaratory of such rule. Even under the Act of 1883, requiring the exclusion of the day on which an act is done, with the 30th day of December excluded, the full fifteen days did not expire until the midnight that brought to a close the 14th of January—a point of time not reached until fourteen hours after the holding of the first meeting before the master: Gregg's Estate, 213 Pa. 260.

In coming to our conclusion we are not unaware that, in Fleck *v.* Fleck, 68 Pitts. L. J. 695 (1920), President Judge Shafer may have reached a different decision.

Clarke *v.* Clarke.

And now, March 18, 1925, the first meeting before the master is declared void and of no effect or validity, the report of the master is set aside and the case referred back to him. When he again fixes the time of the first meeting before him, he will send notice of the said meeting, together with a copy of the interrogatories of the libellant, by registered letter addressed to the respondent, "*at least* fifteen days prior to said meeting."

From Aaron S. Swartz, Jr., Norristown, Pa.