FISCHER *v.* FISCHER

[No. 2, October Term, 1949.]

502

*Decided November 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Louis S. Ashman* for the appellant.

*Eldridge Hood Young,* with whom was *Harold M. Vick* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is one of those all too often frequent divorce cases in which parties request a legal separation because of cessation of marital activities while continuing to live in the same house. In the case before us, the wife brought the original bill for a divorce *a mensa* and for alimony. The husband then filed a cross bill for divorce *a mensa.* The Chancellor dismissed both. The wife did not appeal, but the husband did. So the question before us is only whether he showed sufficient grounds to get a divorce *a mensa* from his wife.

Another case was brought by the wife, asking for the annulment of a deed for the property in which the couple lived, made by her husband to his son by his first wife. The Court set aside this deed, but no appeal was taken by the husband from this decision, so that question, although intimately connected with the facts in the divorce case, is not before us.

The parties were married in 1942. Each had been married before, and each had grown children. The

appellant had been divorced from his first wife, and she had married again. Their son is married and has a family. One of the wife's daughters by her first husband lives with the Fischers. She is employed, and at the time the case was heard below was 23 years old. In November, 1946, she came home one night, was alarmed by something outside of the house, and requested her mother to sleep in her room. The husband did not object to this, and the wife continued to sleep with her daughter from that time on. The husband said he asked her to come back, but she did not come back. The wife denies this, and says that the next day he told her he was going out that night by himself. That from that time on he would never take her out again, and said that he did not care for her. That he did go out alone, she did not return to his room because of what he said, and afterwards he never even talked to her, but said he was through with her forever. On one occasion, however, in February 1947, when her married daughter and her grandson were in the house in the day-time, she admitted her husband called her and asked her to get in his bed. She refused because of the manner in which he asked it in the hearing of her daughter and grandson. After this occurrence the husband transferred the property to his son, and a proceeding in the Peoples' Court was started to compel the wife to pay rent or to get out of the house, and subsequently, another proceeding was started to put the daughter out, or to collect rent from her. There is other testimony about the husband's physical condition, and his claim (denied by the wife) that she refused to cook for him, but we see no necessity for prolonging this opinion by its relation.

In our opinion the evidence does not justify the conclusion that the husband wanted his wife to come back or that he asked her in good faith to do so. His actions indicated otherwise, and we do not think he has proved his right to a divorce *a mensa.* The refusal of a decree in favor of the wife is not before us, and, therefore, we do not pass upon the question whether or not she was

justified in staying away from her husband. However, the Chancellor, who saw the parties, thought there was not much effort on the part of either of them to effect reconciliation, and he said "The upshot of the whole story is that this Court is convinced it is practically a cessation of hostilities by mutual consent." We find nothing in the record to justify us in disturbing the decree of the Chancellor.

The appellee has made a motion to dismiss the appeal because it was not entered within 30 days from the date of the decree. Rule 5 of the Rules of this Court respecting appeals, 1947 Supplement, Code of Public General Laws, page 1992. It appears that the decree was entered on November 26, 1948, and the appeal on December 27, 1948. December 25th was, of course, Christmas Day, a holiday, and the following day, the 26th, was Sunday. In 1941, by Chapter 522 of the Acts of Assembly of that year, codified as Section 2, of Article 94, the Legislature attempted to make uniform the method of computing time in statutes or rules of the court. By the terms of that statute the day of the act, after which the designated period of time begins to run is not included, but the last day of the period is, unless it is Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Sunday nor a legal holiday. There is a further provision that the last day is not to be included when the act to be done is the filing of some paper in court, and the office of the clerk of the court, on said last day, is not open or is closed for part of a day, in which event the period runs until the next day which is neither a Sunday, Saturday, a legal holiday or a day on which said office is not open the entire day. Under either of these exceptions the appellant was in time in filing his appeal. We considered this section in *Pumphrey v. Stockett,* 187 Md. 318, 49 A. 2d 804. The appellee bases her motion upon the decision of this Court in *Winkel v. Geiger,* 154 Md. 673, 141 A. 345, 346, which construed the original statute which fixed the time for appeal "within two months * * * and not afterwards".

506

The Act of 1941 had then not been passed, but it was in force when Rule 5 was adopted in 1945. It is contended that because no change was made in the wording of the new rule, it was intended to adopt for it the construction placed upon the old rule in *Winkel v. Geiger, supra.* But our rule was passed with knowledge of the attempt by the Legislature to make uniform the method of computation of time, and it must be construed in the light of that statute. Had we intended to provide a method of computing, different from the uniform method prescribed by the statute, we would have said so. We did not intend to do this, we did not make an exception in the rule, and the time under the rule is to be computed according to the statute. Thus computed, the appeal was taken in time.

*Decree affirmed with costs*