# CLINTON J. YERKES

*vs.*

# BOARD OF SUPERVISORS OF ELECTIONS.

*Primary Election—Review of Count—Procedure—Time of Filing Petition—Computation of Time.*

Code, art. 3, sec. 199B, authorizing a candidate for nomination, who has been defeated at a primary election, to petition the supervisors of elections for an appeal from and review of the action of the judges of election, and providing for the giving by the petitioner of a bond to be approved by a judge of the Baltimore Supreme Bench or of the circuit court of the county, contemplates that the petition shall be addressed to and filed with the board of supervisors.                    p. 461

The statute authorizing a defeated candidate for the nomination to petition the supervisors of elections for a review of the action of the judges of election "within seven days after the day of the primary election," it was not sufficient, when the election was held on the ninth day of the month, to file the petition on the seventeenth day thereof.                    pp. 462, 463

When by a statute or a rule of court the time stipulated for the performance of an act is such that it does not necessarily include a Sunday, that day will be excluded in the computation of time for the performance of the act without an express requirement; and when the time stipulated must necessarily include one or more Sundays, that day will be included, in the absence of an express proviso for its exclusion.      pp. 463, 464

*Opinion filed January 27th, 1922.*

Appeal from the Circuit Court for Cecil County (ADKINS, C. J., HOPPER and WICKES, JJ.).

Mandamus proceeding by Clinton J. Yerkes against David G. Black, and others, constituting the Board of Supervisors of Elections of Cecil County. From an order dismissing the petition for mandamus, petitioner appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*William L. Rawls,* with whom were *William Pepper Constable* and *Henry L. Constable* on the brief, for the appellant.

*Isaac Lobe Straus,* with whom was *Omar D. Crothers* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case Clinton J. Yerkes, a Democratic candidate for sheriff at the primary election held on Friday, September 9th, 1921, in Cecil County, was, by the official count, returned defeated by one J. Wesley McAllister, also a candidate for sheriff of the same party.

On the 15th day of September of that year, Yerkes submitted to the HONORABLE LEWIN W. WICKES, Associate Judge of the Second Judicial Circuit of Maryland, of which Cecil County is a component part, a petition addressed to the appellees, "David G. Black, Robert B. Foard and Victor R. Bennett, constituting the Board of Supervisors of Elections for Cecil County," in which it is alleged or stated that the petitioner thereby appealed from the "action and decision of said judges of election in declaring that J. Wesley McAllister received the highest number of votes cast in said election for the office of sheriff * * * at said primary election," and requested that said Board should "review said actions and decisions of said judges of said primary election as to votes and ballots cast at said primary election for the candidates for the nomination of sheriff," and to that end prayed the Board to pass an order "directing all ballot-boxes, returns, tally sheets and other paraphernalia of said election to be produced before it" and to review the action of said judges. The petition concluded with the offer to give bond to the State of Maryland, in an amount to be fixed by the Circuit Court for Cecil County, to pay the reasonable costs of said appeal, recount, review and recanvass.

On the same day JUDGE WICKES passed the following order:

"Ordered this 15th day of September, 1921, by the Circuit Court for Cecil County that Clinton J. Yerkes, contestant in the above entitled case, give bond in the sum of $500.00, with approved security, to pay the reasonable costs of said appeal, recount, review and recanvass in the above mentioned case.

"It is further ordered that a copy of said petition and this order be served on the supervisors of elections by September 20th, 1921."

On the said 15th day of September, 1921, a bond was submitted to and approved by JUDGE WICKES, pursuant to his order previously passed, and a copy of said petition, with the heading thereto "In the Circuit Court for Cecil County—No. 2 Petitions—September Term, 1921," was thereupon served upon Black, Foard and Bennett, Supervisors of Elections for Cecil County, by the sheriff of that county.

In response to the petition of the appellant, September 21st, 1921, was fixed by said Supervisors as the day upon which they would sit to recount and recanvass said ballots, and that fact was communicated to the appellant, but on that day counsel for J. Wesley McAllister appeared before the board and objected to the recount, because, as stated in the petition for a mandamus subsequently filed, the petition filed by the petitioner was not properly filed in that the case had been filed in the Circuit Court and not before said Board, and upon that contention the Board of Supervisors refused the recount and recanvass requested by the petitioner.

Thereafter, on September 24th, 1921, the appellant filed, in the Circuit Court for Cecil County, a petition asking that the writ of mandamus be directed to said Black, Foard and Bennett, Supervisors of Elections for Cecil County, commanding them "to order all ballot boxes, returns, tally sheets and other paraphernalia of said election to be produced before them, and further commanding them to review the actions of the judges of said election held on said 9th day of September, 1921, in so far as the same related to the nomination for the office of sheriff of said Democratic party, and

recount and recanvass the said ballots for said nomination for said office in the election districts and precincts of Cecil County cast in said primary election for each of the candidates for the Democratic nomination for said office of sheriff."

The petition alleged the facts that we have stated, together with the further fact that "the petition which was submitted to the judge, and upon which the order aforesaid was written, was upon the same day, namely, the 15th day of September, 1921, handed to the Clerk of the Circuit Court for Cecil County, and immediately thereafter, on the 16th day of September, 1921, copies of said petition were placed in the hands of the Sheriff for Cecil County, to be delivered to the Board of Supervisors of Elections for that county, and were by said Sheriff served upon said Board of Supervisors of Elections on the 16th day of September, 1921"; though the day upon which the copy was served upon them is not shown by the Sheriff's return.

The petition further alleged that "the reason stated by counsel for the said J. Wesley McAllister upon which said Board acted, namely: that said petition had been filed in the Circuit Court for Cecil County, and not before said Board, was entirely without foundation in law or fact, the fact being, that within seven days from the date of said primary election said petition, * * * properly addressed to said Board, as will appear by reference to copy of same filed herewith, was regularly and duly served and delivered to said Board by the Sheriff of Cecil County, acting for and on behalf of and at the direction of your petitioner."

The petition was answered by the appellees on September 26th, 1921, and, among other things, it is therein alleged that "the petitioner never filed with the Board a petition for a recount and recanvass of the votes cast in said primary election with respect to nomination for said office of sheriff of Cecil County * * *, and, furthermore, that no petition or proceeding of any sort whatsoever with respect to a recount and recanvass of said votes cast in said primary election for the office of sheirff * * * was in any manner whatsoever filed

with or referred to the Board within seven days after said primary election of September 9th, 1921,' and in their answer the appellees denied "that the said copy of said petition and order * * * was served by the Sheriff * * * upon the defendant Board of Supervisors of Elections, on the 16th day of September, 1921, as alleged in said * * * petition," but the answer avers "that on Saturday, September 17th, 1921, more than seven days after the date of said primary election," the Sheriff of Cecil County left with each of the members of the said Board of Supervisors "a paper purporting to be a copy of the petition which had been filed in the office of the Clerk of the Circuit Court for Cecil County by handing" to each of them said alleged copy "without ever reading it or calling his attention in any manner whatsoever to what it contained or to what it related"; that "the whole of said proceedings alleged to be a service of said petition, for whatever it might be worth, took place more than seven days after said primary election of September 9th, 1921, and, therefore, were not in compliance with, but were in disregard and violation of, the provisions of section 199B," art. 33 of the Code.

A demurrer filed to the answer was overruled and the petition dismissed by the court, and it was from the action of the court in dismissing the petition that this appeal was taken.

This appeal raises two questions, first, were the filing by the appellant in the office of the Clerk of the Circuit Court for Cecil County of the petition addressed to the Supervisors, and the proceedings that followed, in compliance with the requirements of the act in respect to the procedure thereunder; and second, if so, did the appellant, within the meaning of the act, "petition the Board of Supervisors of Election" "within seven days after the date of the primary election."

Sec. 199B, art. 33 of the Code provides:

"Within seven days after the day of any primary election any candidate for a nomination or for delegate to any convention or for executive or member of any committee or position who has been defeated on

the face of the returns *may petition the Supervisors of Elections* of Baltimore City or of any county of the State for an appeal from and review of the action and decision of the judges of election in counting the ballots and for a recanvass and recount of the ballots cast in any or all of the precincts of said county or city or ward or legislative district or political division therein * * * .

"The supervisors of elections of Baltimore City and of the several counties of the State are hereby given jurisdiction and power to hear and determine said appeals; to review and correct the action of the judges of election in their respective jurisdictions and to re-canvass, recount and certify said result of said primary election. And for all the purposes of said review, recount, recanvass, etc., the said supervisors of elections shall act and be judges of election for counting said ballots, acting as such in the premises within their respective geographical jurisdictions.

"Upon the filing of said petition as aforesaid, accompanied by affidavits made by officers of election or by watchers, challengers or by other persons setting forth acts of fraud, mistake, error or irregularity in making said count or returns by the judges of election, or setting forth that some of the returns and tally sheets of said primary election show on their face ambiguity, error, or fraud, mistake or miscalculation by the judges of election, or if no such affidavits are filed with said petition and the petitioner in lieu of such affidavits offers to give and does give bond, in amount to be fixed in each instance and approved by a judge of the Supreme Bench of Baltimore City or of the circuit court for the county as the case may be, to pay the reasonable costs of said appeal, recount, review and recanvass. The said supervisors shall in either event produce before them the ballot boxes, returns, tally sheets and paraphernalia of said election and shall proceed forthwith in a summary way without answer, pleading or technicality and without requiring any evidence to be taken or proof submitted, to

review the actions of the judges of elections and re-
count the ballots in the precincts named in said peti-
tion in said county, city, legislative district, ward or
other political division thereof as the case may be."

The statute in express terms confers jurisdiction and power
upon the Boards of Election Supervisors, when an appeal to
them is taken, "to review and correct the action of the judges
of election in their respective jurisdictions," and it is pro-
vided that the party desiring to take an appeal from the ac-
tion and decision of the judges of election shall *"petition the
Supervisors of Elections"* for an appeal; and upon the filing
of the petition the petitioner must either file with it affidavits
of the character of those mentioned in the statute, or, in his
petition, offer to give bond in an amount "to be fixed in
each instance and approved by a Judge of the Supreme
Bench of Baltimore City or of the circuit court for the county
as the case may be," and when the petition is filed with said
affidavits, or when the petition is filed without the affidavits,
but containing the offer to give the bond, and the bond is then
or thereafter given, approved by the judge as required by the
statute, the Supervisors shall produce before them the ballot-
boxes and forthwith "proceed to review the action of the
judges of election and recount the ballots in the precincts
named in said petition in said county, city, legislative dis-
trict, ward or other political division thereof as the case
may be."

It is clear, we think, that the statute contemplates that the
petition in such cases should be addressed to and filed with
the Board of Election Supervisors. It is only when the party
appealing offers, in his petition, to give bond in lieu of filing
the affidavits, mentioned in the statute, that the action of the
court is in anyway invoked, and, then only to the extent of
determining the penalty of the bond and approving it. In
fixing the amount of the bond it is essential that the court be
informed as to the extent to which the recount or recanvass is
to be made, that is, whether the ballots in all, or only in some

of the precincts are to be recounted or recanvassed, as this affects the question of the costs of the recount, and it is to secure the payment of such costs that the bond is given. Therefore, in presenting this question to the court, the application made to it should inform it as to such facts, and, as it acts upon them, it would seem to be the better and proper practice in such cases to file the application or petition asking that it fix the amount of the bond, together with the bond when so approved, with the clerk of the court, by whom a certified copy of such bond should be furnished to the Board of Supervisors, showing that the party appealing to them had complied with the statute in giving said bond, which, under the statute, is a condition precedent to their proceeding with the recount and recanvass of the ballots.

It is contended, however, by the appellant, that the Board of Supervisors may be "petitioned" through the circuit court, as was done in this case, and it is claimed that such is the proper procedure in view of the fact that the action of the court is invoked in the approval of the bond, and that such procedure is essential in order that the acts of the court may become a matter of record, but this alleged requirement is provided for in the method of procedure suggested above.

But assuming, though not deciding, that the Board of Supervisors, within the meaning of the act, could have been "petitioned" in the way here attempted, it was, we think, essential that a copy of the petition filed with the clerk, giving notice to the Board of Supervisors of the petitioner's desire and request for an appeal from the action of the judges of election, and for a recount and recanvass of the ballots, should have been served upon the Board of Election Supervisors within seven days after the day of the primary election.

The answer, which we must take to be true in deciding the question here presented, arising under the demurrer thereto, alleges that a copy of the petition was not served upon the members of the Board of Supervisors of Election until Saturday, the 17th day of September, more than seven days after the date of the primaries, unless Sunday, the 11th day of

September, be excluded therefrom, which it was contended by the appellant should be done.

We, however, cannot concede the correctness of his contention.

In *American Tobacco Company* v. *Strickling,* 88 Md. 508, this Court quoted with approval from 26 *Ency. of Law,* 10, in which it is said: "As a general rule when an act is required to be done within any certain number of days after or before a fixed time, Sunday is to be included in computing the number of days when it exceeds seven. If it is less than seven, Sunday must be excluded." The Court, in that case, speaking through CHIEF JUDGE BOYD, further said: "The rule may be said to be somewhat arbitrary, yet it is not without a reason. When the Legislature fixes a limitation of time of more than seven days, it knows that the period must necessarily include one or more Sundays, and hence if it intends to exclude them it can and should say so, but when the period of time is less than seven days, it may or may not include a Sunday, depending upon the day of the week it is computed from." This rule, of course, will not apply when Sundays are expressly excluded by the statute or the intention of the legislature to exclude them is manifest.

The above stated rule is well supported by many authorities, among them, *Geneva Cooperage Co.* v. *Brown,* 124 Ky. 16; *State* v. *Michel,* 52 La. Ann. 936; *Cunningham* v. *Mahan,* 112 Mass. 58; and *Stevenson* v. *Donnelly,* 221 Mass. 161, Annot. Cases, 1917 E, 932. By the rule stated, when the time is less than seven days, Sunday is excluded, but when it exceeds seven days, Sunday is included. It will be thus observed that the rule is silent when the time is *seven days.* But should we apply the reason of the rule, as stated, that where the time named must necessarily include one or more Sundays the Legislature would have expressly excluded Sunday had it so intended, it follows that when the time is *seven days* Sunday therein should be included in the computation; for the period of seven days must necessarily include a Sunday.

In *Stevenson* v. *Donnelly, supra,* in which the opinion was delivered by CHIEF JUSTICE RUGG, and where the period of time was six days, the above stated rule, which was laid down in the earlier case of *Cunningham* v. *Mahan, supra,* was said to be the established rule of interpretation in that State. JUDGE RUGG, in discussing the rule, said: "It is a simple rule, easy of application and as free from the possibility of misapprehension or mistake as any such rule well can be, to hold that in computing any period of time less than a week, Sunday is to be excluded; and that in computing any period of time *of a week* or more, Sunday is to be included. This is the law as it has been commonly understood and practiced in this Commonwealth for many years. It is a good practical rule. There is no reason disclosed in this record why it should not be applied in the case at bar. Although in this instance the effect of the statute in prescribing six days is the same as if a period of seven days had been limited, that is a mere accident and does not affect the soundness of the rule."

The established rule in many of the states, including Maryland, is, we think, well stated in note to *Stevenson* v. *Donnelly, supra,* in Anno. Cases, 1917 E, 934, where it is said that "when by a statute or a rule of court the time stipulated for the performance of an act is such that it does not necessarily include a Sunday, that day will be excluded in the computation of time for the performance of the act without an express requirement; and when the time stipulated must necessarily include one or more Sundays, those days will be included in the absence of an express proviso for their exclusion."

Under this rule the service of the copy of the petition mentioned in this case upon the members of the Board of Supervisors of Election was not within seven days after the day of said primary election.

It was for the reasons above stated that the order of the lower court dismissing the petition for the writ of mandamus was affirmed by the *per curiam* order of this Court heretofore filed.